UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE No.:

GAIL CAUDLE

    Plaintiff,

v.

DP & MORE GROUP INC.
d/b/a Badcock Home Furniture and More

    Defendant.
_____/

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff, Gail Caudle, by and through her undersigned counsel, hereby sues Defendant, DP & More Group Inc. doing business as Badcock Home Furniture and More for injunctive relief pursuant to 42 U.S.C. §§12181-12189 of the Americans with Disabilities Act ("ADA") and 28 C.F.R. Part 36 and alleges:

## JURISDICTION

1. This is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§12181-12189. This Court is vested with original jurisdiction under 28 U.S.C. §1331.

2. Venue lies in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) and Local Rule 1.04, in that the original transaction or occurrence giving rise to this cause of action occurred in this District.

3. Defendant, DP & More Group Inc. is authorized to conduct and is conducting business within the State of Florida and within the jurisdiction of this court.

## PARTIES

4. Plaintiff, Gail Caudle ("Plaintiff") is a resident of the state of Florida. Plaintiff has a "qualified disability" under the ADA as she is disabled with CRPS in her left hip and thigh (following hip surgery) and with CRPS in her right lower leg and foot (following ankle surgery), which spasms and pain cause her to be unable to walk, as she is also unable to put any weight on her right leg or foot. Consequently, Plaintiff uses a wheelchair for mobility. Plaintiff's disability is defined in 42 U.S.C. §12102(1)(A)(2), 28 C.F.R. §36.105(b)(2) and 28 C.F.R. §36.105(2)(iii)(D).

5. Defendant DP & More Group Inc. ("Defendant") is a Florida for profit corporation and on information and belief is the franchise owner and operator of the "Badcock Home Furniture and More" franchise located at 382 NW Main Boulevard, Lake City, Florida 32055.

## FACTS

6. Badcock Home Furniture and More stores offer furniture, appliances, mattresses, electronics, décor and seasonal home items such as lawn care equipment, grills, air conditioners, heaters and fireplaces. Badcock Corporation,

the Badcock Home Furniture and More franchisor, was acquired by the Franchise Group, Inc. in 2021. Franchise Group, Inc. is a NASDAQ company which owns the franchisor operations for Buddy's Home Furnishing, American Freight, The Vitamin Shoppe, Pet Supplies Plus, Sylvan Learning and Badcock Home Furniture. Defendant is the franchise owner/operator of the Badcock Home Furniture and More store in Lake City.

7. As with all Badcock Home Furniture and More stores, Defendant's Lake City Badcock Home Furniture and More franchise operation is a place of public accommodation pursuant to 42 U.S.C. §§12181(7)(E) as an "other sales establishment." The Badcock Home Furniture and More store which is the subject of this complaint is also referenced as "(furniture) store" or "place of public accommodation."

8. As the operator of a franchise Badcock Home Furniture and More store which is open to the public, Defendant is defined as a "Public Accommodation" within meaning of Title III because it is a private entity which owns or operates an "other sales establishment" as defined in 42 U.S.C. §12182, 42 U.S.C. §12182, §12181(7)(E); 28 C.F.R. §36.104(5).

9. Due to the close proximity to Plaintiff's home to the Badcock Home Furniture and More store in Lake City, Plaintiff has been patronizing the store for many years.

10. Due to the fact that she perambulates with the assistance of a wheelchair, Plaintiff has met barriers to access while patronizing Defendant's Badcock Home Furniture and More store. Based on the access impediments Plaintiff encountered, Plaintiff has been denied full and equal access by Defendant.

11. As the owner of a franchise Badcock Home Furniture and More store, Defendant is well aware of the ADA and the need to provide for equal access in all areas of its furniture store. Therefore, Defendant's failure to reasonably accommodate mobility impaired and disabled patrons by ensuring that its store is fully accessible is/was willful, malicious, and oppressive and in complete disregard for the Civil Rights of the Plaintiff and in violation of 28 C.F.R. §36.302.

12. As a result of Defendant's discrimination, Plaintiff has suffered loss of dignity, mental anguish and other tangible injuries and has suffered an injury-in-fact.

13. Plaintiff continues to desire to patronize the Badcock Home Furniture and More store in Lake City, but continues to be injured in that she continues to be discriminated against due to the barriers to access within that furniture store which are in violation of the ADA.

14. Any and all requisite notice has been provided.

15. Plaintiff has been obligated to retain the civil rights law office of J. Courtney Cunningham, PLLC and has agreed to pay a reasonable fee for services

in the prosecution of this cause, including costs and expenses incurred. Plaintiff is entitled to recover those attorney's fees, costs and expenses from Defendant pursuant to 42 U.S.C. §12205.

## COUNT I – VIOLATIONS OF TITLE III OF THE ADA

16. The ADA was enacted and effective as of July 26, 1990, and ADA legislation has been protecting disabled persons from discrimination due to disabilities since that time. Over 32 years have passed since enactment of the ADA, public accommodations and places of public accommodation have had adequate time for compliance.

17. Congress explicitly stated that the purpose of the ADA was to:

(i) provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
(ii) provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and,
(iii) invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced on a daily by people with disabilities.

42 U.S.C. §12101(b)(1)(2) and (4).

18. Prior to the filing of this lawsuit, Plaintiff personally visited the Badcock Home Furniture and More store in Lake City to shop, however, Plaintiff was denied adequate accommodation because, as a disabled individual who utilizes

a wheelchair for mobility, Plaintiff met barriers to access. Therefore, Plaintiff has suffered an injury in fact.

19.   Defendant has discriminated (and continues to discriminate) against Plaintiff by denying full and equal access to, and full and equal enjoyment of, goods, services, facilities, privileges, advantages and accommodations at its Badcock Home Furniture and More store in derogation of 42 U.S.C. §12101 *et seq.* and as prohibited by 42 U.S.C. §12182 *et seq.* by failing to remove barriers to access pursuant to 42 U.S.C. §12182(b)(2)(a)(iv), where such removal is readily achievable.

20.   Plaintiff has been unable to, and continues to be unable to, enjoy full and equal safe access to, and the benefits of, all the accommodations and services offered at Defendant's Badcock Home Furniture and More store in Lake City.

21.   Defendant is governed by the ADA and must be in compliance therewith. However, Defendant has discriminated against disabled patrons in derogation of 28 C.F.R. Part 36.

22.   Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991 (as amended), the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA, known as the Americans with Disabilities Act Accessibility Guidelines (hereinafter "ADAAG"),

28 C.F.R. Part 36, under which said Department may obtain civil penalties of up to $75,000 for the first violation and $150,000 for any subsequent violation.

 23. Defendant's Badcock Home Furniture and More store is in violation of 42 U.S.C. §12181 *et seq.,* the ADA and 28 C.F.R. §36.302 *et seq.,* and Defendant is discriminating against Plaintiff as a result of <u>inter alia</u>, the following specific violations:

 i. Plaintiff had difficulty exiting her vehicle, as the designated accessible parking spaces are located on an excessive slope (which is over 2.1%). This is in violation of Section 502.4 of the 2010 ADA Standards for Accessible Design states that parking spaces shall comply with Section 302 in that changes in level are not permitted. Defendant is also in violation of Section 4.6.3 of the ADAAG which states that parking spaces shall be level with surface slopes not exceeding 1:50 (2%) in all directions.

 ii. Plaintiff had difficulty exiting her vehicle as the designated accessible parking space access aisles are located on an excessive slope. This is in violation of Section 4.6.3 of the ADAAG which states that states that parking space isles shall be level with surface slopes not exceeding 1:50 (2%) in all directions. This is also in violation of Section 502.4 of the 2010 ADA Standards for Accessible Design (in compliance with Section 302) which states that parking access aisles shall be at the same level as the

    parking spaces they serve. The failure to provide parking spaces and access isles which serve them on an accessible slope is also a failure to provide accessible means of egress from the parking area to the entrance of the furniture store due to the slope.

iii. Plaintiff had difficulty parking and exiting her vehicle because the access isles are not clearly and properly marked which is in violation of Section 502.3.3 which states that access isles shall be marked (to discourage use as additional parking spaces). Advisory 502.3.3 does not specify method and color of marking, and leaves this to State or local laws and regulations. Florida State FBC Fig 9, FDOT Index #17346 states that markings are to be blue and white and that the space between the blue and white line is 2" and that the access aisle is to be measured from the centerline of the white lines. In this instant case, there is no adequate marking of access isles at the accessible parking space.

iv. Plaintiff had difficulty perambulating to the furniture store entrance from the parking lot as there is currently no existing accessible route to help persons with disabilities safely maneuver through the parking lot to the main entrance. This is in overall violation of Section 206.2 of the 2010 ADA Standards of Accessible Design which states that at least one accessible route must be provided from accessible

    parking spaces and accessible passenger loading zones to the accessible building. This is a violation of 4.3.7 of the ADAAG which states that an accessible route with a running slope greater than 1:20 shall comply with Section 4.8, and the cross slope of an accessible route shall not exceed 1:50 and is also in violation of Section 4.7.2 of the ADAAG (maximum slope of curb ramps shall not exceed 1:20, further delineated in sub-section (v below). This is also a violation of Section 406 of the 2010 ADA Standards which states that curb ramps on accessible routes shall comply with all aspects of Sections 406, 405.2, 405.3, 405.4, 405.5 and 405.10. Likewise, this is violation of Section 403.3 of the 2010 ADA Standards which states that the running slope of walking surfaces shall not be steeper than 1:20 and the cross slope of walking surfaces shall not be steeper than 1:48.

v.    Plaintiff had difficulty perambulating to the furniture store from the parking lot, as the as the existing curb ramp has a non-complaint slope. The curb ramp is in violation of Section 4.7.2 of the ADAAG which states that the maximum slope of curb ramps shall not exceed 1:20, and must comply with Section 4.8.2, and that the slope must be measured as depicted within Fig. 11, with transitions being flush and free of abrupt changes. This is also in violation of Section 406.1 of the 2010 ADA Standards for Accessible

      Design which states that curb ramps on accessible routes shall comply with all aspects of Section 406, 405.2, 405.3, 405.4, 405.5 and 405.10.

vi. Plaintiff had difficulty using the main door (entrance by the accessible parking space) without assistance, as the main door does has a non-compliant sloped surface within the required maneuvering clearance of the door. This is a violation of Section 4.13.6 of the ADAAG and Section 404.2.4 of the 2010 ADA Standards for Accessible Design (maneuvering clearances shall extend the full width of the doorway and the required latch side or hinge side clearance). Section 4.13.6 states that the minimum maneuvering clearances for doors be within specifications shown in Fig. 25 and that the ground floor within the required clearance be level and clear. The clear maneuvering clearance for a front approach must be 48 min (and for side approach, 54 by 42 min).

vii. Plaintiff had difficulty at the cashier counter, as it is mounted above the required height. This is a violation of Section 7.2 of the ADAAG and Section 904.4.1 of the 2010 ADA Standards for Accessible Design, which state that sales and service counters must be 36 inches (915 mm) long minimum and 36 inches (915 mm) high maximum above the finished floor. Further, clear floor or ground space must comply with Section 305 by being

      positioned for a parallel approach adjacent to the 36 inch (915 mm) minimum length of the counter.

viii. There are permanently designated interior spaces without proper signage location. For example, at the women's accessible restroom, signage is mounted on the door leaf without braille or raised characters which is in violation of Section 4.1.3(16) and 4.30 of the ADAAG and Sections 216.2 and 703 of the 2010 ADA Standards for Accessible Design.

ix. Plaintiff could not enter into the restroom area without assistance as the door clear width is not provided. The fact that the doorway opening does not have the required clear width is a violation of Section 4.13.5 of the ADAAG and Section 404.2.3 of the 2010 ADA Standards for Accessible Design. Section 4.13.5 and Section 404.2.3 state that doorways must have a minimum clear opening of 32 in (815 mm) with the door open 90 degrees (as depicted at Figs. 24(a), (b), (c), and (d)).

x. Plaintiff could not lock the restroom door without assistance, as the door hardware is not designed to accommodate the ability to lock the door with a closed fist, which is in violation of 28 C.F.R. Part 36, and ADA/ABA Design Compliance Code §309.4 (operable parts are to be operable with one hand and shall not require tight grasping, pinching, or twisting of the wrist and have a force required to activate no more than 5 pounds). Handles, pulls,

        and latches must have hardware in a shape that is easy to grasp one hand as required by Section 4.13.9 of the ADAAG. This is also a violation of Section 404.2.7 of the 2010 ADA Standards for Accessible Design requires controls and operating mechanisms to be operable with one hand and not require tight grasping, pinching, or twisting of the wrist, with force required to activate no greater than 5 lbs.

xi. Plaintiff could not use the restroom without assistance, as the required clear floor space was not provided due to the dimensions. Failure to provide compliant clear floor space in the restroom is a violation of Sections 4.2.3 and 4.22.3 of the ADAAG and Sections 304.3 and 603.2 of the 2010 ADA Standards for Accessible Design. Section 4.22.3 states that an unobstructed turning space must comply with Section 4.2.3 within an accessible toilet room. Section 4.2.3 and Section 304.3 gives the dimensions of wheelchair turning space as the space required for a wheelchair to make a 180-degree turn being clear space of 60 in (1525 mm) diameter (Sec 4.2.3 Fig. 3(a)) or a T-shaped space (Sec 4.2.3 Fig. 3(b)). Section 603.2 requires turning space to comply with Section 304, requires floor space for turning be clear of fixtures and not overlap, and that doors shall not swing into the clear floor space.

xii. Plaintiff could not transfer to the toilet without assistance, as the as the side wall grab bar and the rear wall grab bar are both missing. This is a violation

of Sections 604.5 and 609 of the 2010 Standards for Accessible Design which states that grab bars shall be provided (installed) in the water closet This is also a violation of Section 4.16.4 of the ADAAG which states that grab bars for water closet stalls must be installed on the side wall and be 36 inches long minimum, installed with one end space a maximum of 6 inches from the side wall and shall comply with Figure 29. This also violates Section 4.16.4 in that a grab bar must be installed behind the water closet (on the rear wall) and shall be 36 in (915 mm) minimum in length and further comply with the specification set at Figure 29.

xiii. Plaintiff could not use the toilet paper dispenser without assistance, as the toilet paper dispenser is not mounted in the required location. This is in violation of Section 4.16.6 and Fig. 29 of the ADAAG and Section 604.7 of the 2010 Standards for Accessible Design. Section 4.16.6 states that toilet paper dispensers shall be installed within reach, as shown in Fig. 29(b). Section 604.7 states that toilet paper dispensers shall comply with Section 309.4 and shall be 7 inches (180 cm) minimum and 9 inches (230 cm) maximum in front of the water closet measured to the centerline of the dispenser. Further, the outlet of the dispenser shall be 15 inches (380 mm) minimum and 48 inches (1220 mm) maximum above the finished floor.

xiv. Plaintiff could not use the lavatory sink without assistance, as the lavatory sink does not provide knee clearance above the finished floor to bottom leading edge of fixture at 8" horizontal projection. This failure is in violation of 28 C.F.R. Part 36, Section 4.19.2 of the ADAAG and Section 606.2 of the 2010 ADA Standards for Accessible Design. Section 4.19.2 of the ADAAG states that lavatories shall be mounted with the rim or counter surface no higher than 34 in (865 mm) above the finished floor, provide a clearance of at least 29 in (735 mm) above the finished floor to the bottom of the apron and that knee and toe clearance shall comply with Fig. 31 of that section. Section 606.2 states that knee clearance must be provided a minimum of 4 inches (610 mm) above the finished floor or ground.

xv. Plaintiff was exposed to a cutting/burning hazard as the lavatory sink pipes are not wrapped, therefore there is no insulation to protect users of that sink against the plumbing pipes under the sink. This is a violation of Section 4.19.4 of the ADAAG which states that hot water and drain pipes under lavatories shall be insulated or otherwise configured to protect against contact. This also a violates Section 606.5 of the 2010 ADA Standards for Accessible Design, because the lavatory pipes are not wrapped.

xvi. Plaintiff could not use the lavatory mirror as it is mounted too high, which is in violation of Section 213.3.5 of 28 C.F.R. Part 36, Section 4.19.6 of the

    ADAAG and Section 603.3 of the 2010 ADA Standards for Accessible Design which states that mirrors located above lavatories or countertops shall be installed with the bottom edge of the reflecting surface 40 inches (1015 mm) maximum above the finished floor or ground and mirrors not located above lavatories or countertops shall be installed with the bottom edge of the reflecting surface 35 inches (890 mm) maximum above the finished floor or ground.

xvii. Plaintiff could not use the paper towel dispenser without assistance, as it is not mounted in the required location so is out of reach of a disabled individual in wheelchair. This is a violation of 2010 ADA Standards for Accessible Design Section 308.2.1, which states that the accessible height for a forward reach dispenser shall be 48 inches maximum and the low forward reach shall be 15 inches minimum above the finish floor or ground and Section 308.2.2 states that where there is obstructed forward reach (when reach depth exceeds 20 inches), the high forward reach shall be 44 inches maximum and the reach depth shall be 25 inches maximum. This is a further violation of Section 4.2.5 (Fig 5) of the ADAAG, which states that when clear floor space only allows forward approach to an object, the maximum high forward reach allowed is 48 inches (1220 mm) (Fig. 5(a)) and the minimum low forward reach is 15 inches (380 mm) (Fig. 5(b)).

xviii. Plaintiff could not exit the restroom area without assistance, as the required maneuvering clearance on the pull side of the restroom door is not provided as the water closet encroaches over the restroom door space. The fact that the restroom door does not provide the required maneuvering clearance is a violation Section 4.13.6 of the ADAAG which states that the minimum maneuvering clearances for doors be within specifications shown in Fig. 25 and that the ground floor within the required clearance be level and clear. The clear maneuvering clearance for a front approach must be 48 inches minimum (and for side approach, 54 by 42 inches minimum), which not attained in the instant case. This is also a violation of Section 404.2.4 of the 2010 ADA Standards for Accessible Design (maneuvering clearances shall extend the full width of the doorway).

24. Pursuant to the ADA, 42 U.S.C. §12101 *et seq.* and 28 C.F.R. §36.304, Defendant has been required to make its Badcock Home Furniture and More store accessible to persons with disabilities since January 28, 1992 and Defendant has failed to comply with this mandate.

25. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff's injunctive relief; including an order for Defendant to alter its Badcock Home Furniture and More store such that it is made readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA.

*Caudle v. DP & More Group Inc., et al*
*Complaint*

**WHEREFORE,** Plaintiff, Gail Caudle hereby demands judgment against Defendant, DP & More Group Inc., and requests the following injunctive and declaratory relief:

a) The Court declare that Defendant has violated the ADA;

b) The Court enter an Order directing Defendant to evaluate and neutralize its policies, practices and procedures toward persons with disabilities,

c) The Court enter an Order requiring Defendant to alter its Badcock Home Furniture and More store such that it becomes accessible to and usable by individuals with disabilities to the full extent required by the Title III of the ADA;

d) The Court award reasonable costs and attorneys fees; and

e) The Court award any and all other relief that may be necessary and appropriate.

Respectfully submitted the October 7, 2022.

*/s/ J. Courtney Cunningham*
J. Courtney Cunningham, Esq.
FBN: 628166
J. COURTNEY CUNNINGHAM, PLLC
8950 SW 74th Court, Suite 2201
Miami, Florida 33156
Phone:  305-351-2014
cc@cunninghampllc.com
legal@cunninghampllc.com

*Attorney for Plaintiff*